UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM A. LINTON and STACY A. LINTON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. C08-227Z<br><br>ORDER |

THIS MATTER comes before the Court on cross-motions for summary judgment. Having reviewed all papers filed in support of and in opposition to each motion, and having heard the arguments of counsel, the Court GRANTS the Government's motion for summary judgment, docket no. 19, DENIES plaintiffs' cross-motion for partial summary judgment, docket no. 21, and DIRECTS the Clerk to enter judgment consistent with this Order.

**Background**

Plaintiffs William and Stacy Linton seek a partial refund of gift taxes paid for the year 2003. For that year, William Linton reported taxable gifts of $725,548, while Stacy Linton reported taxable gifts of $724,000. *See* Exh. I to Linton Decl. (docket no. 23-10). The Internal Revenue Service ("IRS") examined both gift tax returns and concluded that, during the year 2003, William and Stacy Linton actually made taxable gifts of $1,587,988 and $1,520,440, respectively. *See* Exhs. A & B to Complaint (docket no. 1-2 at 29 & docket

ORDER - 1

no. 1-3 at 29). The Lintons timely paid the additional gift taxes computed by the IRS, in the aggregate amount of $518,331.41, including interest, and in this action, they seek a refund of this additional amount, together with costs and attorney fees.

The gift taxes at issue relate to interests in a limited liability company given by William and Stacy Linton to trusts established for the benefit of their children. In November 2002, William Linton formed WLFB Investments, LLC ("WLFB LLC"). Certification of Formation, Exh. A to Linton Decl. (docket no. 23-2 at 20); *see* Limited Liability Company Agreement dated Nov. 7, 2002 [hereinafter "LLC Agreement"] at 1, 18, Exh. A to Linton Decl. (docket no. 23-2 at 2, 19). At the time of formation, WLFB LLC had only one member, namely William Linton. LLC Agreement at 18, Exh. A to Linton Decl. (docket no. 23-2 at 19).

On January 22, 2003, William Linton gave to his wife Stacy Linton 50% of his percentage interests in WLFB LLC. Gift of Percentage Interest in WLFB Investments, LLC (docket no. 42).[1] Also on January 22, 2003, William and/or Stacy Linton executed and dated the following documents, which contributed property to WLFB LLC:

- A Quit Claim Deed signed by William Linton, conveying undeveloped real property in Snohomish County, which was his separate property, to WLFB LLC; *see* Exh. D to Linton Decl. (docket no. 23-5);

- Letters signed by William Linton, authorizing transfers of securities, including municipal bonds, and cash to WLFB LLC; *see* Exh. D to Auchterlonie Decl. (docket no. 20-5); Exh. E to Linton Decl. (docket no. 23-6); and

- An Assignment of Assets signed by William Linton as Assignor and by both William and Stacy Linton as Managers of Assignee WLFB LLC; *see* Exh. F to Linton Decl. (docket no. 23-7); *see also* LLC Agreement at ¶ 6 (identifying William and Stacy Linton as Managers of WLFB LLC).

In addition, on January 22, 2003, William and Stacy Linton, as well as James Linton, William Linton's brother, signed a number of other documents, which they left undated. These executed, but contemporaneously undated, documents consist of:

---

[1] This gift had no gift tax implications. *See* 26 U.S.C. § 2523(a).

ORDER - 2

- Four separate Trust Agreements signed by both William and Stacy Linton as Grantors, and by James Linton as Trustee, one Trust Agreement for each of the Lintons' four children, who are identified by initials as J.M.L., J.R.L., S.J.L., and T.W.L.; <u>see</u> Exh. E to Auchterlonie Decl. (docket no. 20-6);

- Four separate documents titled "Gift of Percentage Interest in WLFB Investments, LLC" signed by William Linton as Assignor and James Linton, Trustee, on behalf of Assignee, one document for each of the four Trusts; <u>see</u> Exh. G to Linton Decl. (docket no. 23-8); and

- Four separate documents titled "Gift of Percentage Interest in WLFB Investments, LLC" signed by Stacy Linton as Assignor and James Linton, Trustee, on behalf of Assignee, one document for each of the four Trusts; <u>see</u> Exh. G to Linton Decl. (docket no. 23-8).

Each of the Trust Agreements indicates that the Trust is irrevocable and that the Trust Agreement is "entered into effective upon contribution of property to the Trust." Exh. E to Auchterlonie Decl. (docket no. 20-6). The Trust Agreements further state that "[a]t the time of signing of this Agreement, the Grantors have transferred percentage interests in the WLFB Investments, LLC . . . to the Trustee of the Trust for the benefit of the Grantor's [sic] child." <u>Id.</u> Finally, the Trust Agreements reflect that the Trustee, James Linton, "acknowledges receipt of such property and agrees to administer all contributed property pursuant to the terms" of the Agreements. <u>Id.</u>

The documents titled "Gift of Percentage Interest in WLFB Investments, LLC" (the "Gift Documents") contain the following language: Assignor "hereby gifts to the . . . Trust, dated the same date hereof, (the "Assignee") a total of 11.25 of the percentage interests in WLFB Investments, LLC . . . standing in his respective name on the books of the Company." Exh. G to Linton Decl. (docket no. 23-8). Based on this language, each of the four Trusts received 11.25% from each parent, for a total of 22.5 of the percentage interests in WLFB LLC for each Trust.

According to Richard Hack, the attorney who prepared the various documents, a few months after the transactions at issue, when he was preparing the minute book for WLFB LLC, he filled in the missing dates on the Trust Agreements and Gift Documents. Hack Dep. at 13:12-17:1, Exh. B to Colvin Decl. (docket no. 22-3 at 4-8). He put the date of

ORDER - 3

January 22, 2003, on these documents, but he now believes that he made a "mistake" in doing so and that the intended date for the creation of the Trusts and the transfers of percentage interests in WLFB LLC to the Trusts was January 31, 2003. Hack Dep. at 20:18-23:12, Exh. B to Colvin Decl. (docket no. 22-3 at 9-12).

Mr. Hack's deposition testimony is consistent with that of Caryl Thorp, who provided estate planning and tax compliance services for the Lintons. *See* Thorp Dep. at 18:23-19:5, Exh. C to Colvin Decl. (docket no. 22-4 at 6-7). According to Ms. Thorp, the intended order of the transactions was as follows: "To form the LLC, transfer the assets into the LLC, and then determine the amount of any gifts they wanted to make of LLC units for the benefit of their children and do those after that." Thorp Dep. at 20:6-9, Exh. C to Colvin Decl. (docket no. 22-4 at 8). Ms. Thorp explained that this sequence was required "[b]ecause you have to get the assets into the LLC first so it's the owner of the assets before you start making transfers of units in the LLC." Thorp Dep. at 20:12-14, Exh. C to Colvin Decl. (docket no. 22-4 at 8).

When asked in his deposition how he decided on the amount of assets he would transfer to WLFB LLC, William Linton testified as follows:

> Well, it started out Stacy and I were using our lifetime exemptions, and somewhere along the way, with my team of experts, they came up with this thing that people do in my situation and they discount it because as managers, we control it, and what a willing buyer will pay to a willing seller, who is going to buy a hundred percent of someone's share if they can't touch it or feel it or control it, so there's some proven way that they go out and they discount this stuff. Well, it was news to me. . . . They said somewhere between 40 and 49 percent discounting based on the blend of assets that you're proposing. So, based on that, I just did some back math to figure out how much money to put into the LLC.

Linton Dep. at 26:6-23, Exh. B to Auchterlonie Decl. (docket no. 20-3).

The tax return filed on behalf of WLFB LLC for the calendar year 2003 provided the following information about the capital accounts of the LLC members:

ORDER - 4

| member | capital contributed | income | withdrawals | capital balance |
|---|---|---|---|---|
| 1 | $1,792,386 | $5,793 | $1,613,148 | $185,031 |
| 2 | $1,792,386 | $5,793 | $1,613,148 | $185,031 |
| 3 | $806,574 | $26,070 | | $832,644 |
| 4 | $806,574 | $26,071 | | $832,645 |
| 5 | $806,574 | $26,067 | | $832,641 |
| 6 | $806,574 | $26,070 | | $832,644 |

*See* Schedule L to Form 1065 for 2003, Exh. J-1 to Linton Decl. (docket no. 23-11 at 15). Members 1 and 2 are William and Stacy Linton, while Members 3, 4, 5, and 6 are the Trusts for the Linton children. Schedule L reflects contributions of assets in the aggregate amount of $3,584,772, and transfers of capital in the aggregate amount of $3,226,296, divided evenly among the four Trusts, with each Trust receiving $806,574. The capital account balances shown in Schedule L appear consistent with the percentage interests held by each member after the gifts at issue, namely 5% for William Linton, 5% for Stacy Linton, and 22.5% for each of the Trusts.[2]

The LLC Agreement places certain restrictions on the transfer of percentage interests to persons who are not family members, and it limits the involvement of members in the day-to-day business of the LLC, reserving to the Managers (William and Stacy Linton) all "authority or power to act" for WLFB LLC. LLC Agreement at ¶¶ 6.5, 9.1, 9.2, 9.2.1., 9.2.2., & 9.2.3 (docket no. 23-2 at 4-5, 8-10). In light of these provisions, in computing their

---

[2] The tax return for WLFB LLC indicates that the business started on January 31, 2003. *See* Exh. J-1 to Linton Decl. (docket no. 23-11). This date is inconsistent with the Certificate of Formation for WLFB LLC, which was filed by the Washington Secretary of State on November 7, 2002, *see* Exh. A to Linton Decl. (docket no. 23-2 at 21); *see also* RCW 25.15.070(2)(a) ("a limited liability company is formed when its certificate of formation is filed by the secretary of state"), as well as with the Assignment of Assets signed by William Linton and Stacy Linton as Managers of WLFB LLC, which is dated January 22, 2003, and thereby manifests the conducting of business before the date indicated on the tax return, *see* Exh. F to Linton Decl. (docket no. 23-7). The tax return itself, which was prepared by Moss Adams LLP, is dated March 29, 2004, and it does not constitute contemporaneously prepared evidence as to the sequence of the transactions resulting in the capital account balances disclosed in Schedule L.

ORDER - 5

gift taxes for the year 2003, plaintiffs applied a discount of 47% based on the theory that the limitations on alienability and non-controlling status rendered the percentage interests in WLFB LLC unmarketable. *See* Exh. 5 to Moss Adams Advisory Services Appraisal Report for WLFB LLC, Exh. H to Linton Decl. (docket no. 23-9 at 39) [hereinafter "Moss Adams Report"]. The Government contends that any discounting is improper.

**Discussion**

**A.  Standard for Summary Judgment**

The Court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e). Rather, the non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 256. All "justifiable inferences" are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).

**B.  Federal Gift Tax Analysis**

A tax is imposed "for each calendar year on the transfer of property by gift during such calendar year by any individual." 26 U.S.C. § 2501(a)(1). If property is transferred for less than adequate and full consideration, then "the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift." 26 U.S.C. § 2512(b). The value of gifted property is determined as of the date of the gift. 26 U.S.C.

§ 2512(a). A gift is measured "by the value of the property passing from the donor, rather than by the [value of the] property received by the donee," and the amount of a gift is generally an issue of fact. *Shepherd v. Comm'r*, 115 T.C. 376, 383 (2000). A gift is complete when the donor "has so parted with dominion and control as to leave in him no power to change its disposition." 26 C.F.R. § 25.2511-2(b). Although federal revenue acts identify the property interests and rights that are taxed, state law governs the creation of those property interests and rights. *Morgan v. Comm'r*, 309 U.S. 78, 80 (1940).

The gift tax applies "whether the transfer is in trust or otherwise" and "whether the gift is direct or indirect." 26 U.S.C. § 2511(a). An example of an indirect gift is a transfer of property for less than adequate consideration to a corporation, which constitutes an indirect gift of the property to each shareholder of the corporation to the extent of his or her proportionate interest in the corporation. *Shepherd*, 115 T.C. at 388 (citing 26 C.F.R. § 25.2511-1(h)(1)). Because the corporate structure differs from a partnership relationship, the question whether a contribution of property to a partnership is an indirect gift to the partners requires further analysis. In situations in which property has been transferred for less than adequate consideration to a partnership, the distinguishing factor for gift tax purposes is whether the donating partner's contribution of property was apportioned among the other partners or was attributed only to the donor's own capital account. In the former circumstance, the contribution of property has been deemed an indirect gift to the other partners, *see Shepherd*, 115 T.C. at 388-89, while in the latter situation, the transfer has been held not to constitute an indirect gift, *see Estate of Jones v. Comm'r*, 116 T.C. 121 (2001) (citing *Estate of Strangi v. Comm'r*, 115 T.C. 478 (2000)); *see also Gross v. Comm'r*, 96 T.C.M. (CCH) 187, 2008 WL 4388277 (2008).

   **1.   Indirect Gift to Partners (*Shepherd*)**

In *Shepherd*, the taxpayer and his wife executed deeds purporting to transfer certain leased land to a partnership, the partnership agreement for which the taxpayer signed on the

same day. 115 T.C. at 379, 382. The following day, the taxpayer's two adult sons executed the partnership agreement. *Id.* at 379. The Tax Court concluded that, under the law of the state in which the partnership was created, the partnership came into existence on the second day, when the sons signed the partnership agreement. *Id.* at 384-85. As a result, the Tax Court held that the conveyance of land occurred on the second day, not on the first day. *Id.* at 385 (on the first day, "there was no completed gift, because there was no donee, and petitioner had not parted with dominion and control over the property"). On a subsequent day, the taxpayer contributed bank stock to the partnership. *Id.* at 381. The Tax Court ultimately held that the taxpayer's transfers of both land and bank stock represented indirect gifts to each of his sons to the extent of their respective percentage interests in the partnership. *Id.* at 389. The Tax Court reasoned that, because the contributions of property were allocated, pursuant to the partnership agreement, to the taxpayer's and his sons' capital accounts according to their respective partnership shares, and because each son would be entitled upon dissolution of the partnership to receive payment of the balance in his capital account, the taxpayer had made indirect gifts to the sons. *Id.*

**2. Contributions to Own Capital Account (*Jones* and *Gross*)**

In contrast, in both *Estate of Jones* and *Gross*, one partner's contributions were not treated as indirect gifts to the other partners. In *Estate of Jones*, the decedent formed two different partnerships under Texas law. 116 T.C. at 123-24. The first partnership, Jones Borregos Limited Partnership ("JBLP"), was with his son, and the second partnership, Alta Vista Limited Partnership ("AVLP"), was with his four daughters. *Id.* Both decedent and his son transferred certain property to JBLP, with the contributions reflected in their respective capital accounts. *Id.* at 123. Decedent and each of his daughters transferred certain property to AVLP, with the contributions reflected in their respective capital accounts. *Id.* at 124.

On the same day the partnerships were formed and property was contributed, decedent gave his son an 83.08% limited interest in JBLP, and he gave each of his daughters a 16.915% limited interest in AVLP. *Id.* at 123-25. Decedent filed a federal gift tax return in which he applied a 66% percent discount to the limited interests in JBLP and a 58% discount to the limited interests in AVLP, pursuant to a "minority interest, nonmarketable" theory. *Id.* at 127. The Tax Court concluded that, in making contributions to each of the partnerships, decedent had not made indirect gifts to his children because he had received continuing limited partnership interests in exchange for the property at issue, his contributions had been properly reflected in his respective capital accounts, and the value of the other partners' interests had not been enhanced by his contributions. *Id.* at 128.

In *Gross*, the Tax Court found that the contributions of property were "similar in form to the contributions in *Estate of Jones*" and were "distinguishable in form from the gifts in *Shepherd*." 2008 WL 4388277 at *7. The Tax Court concluded that the taxpayer, who had formed a partnership with her two daughters, "made a series of contributions of securities to Dimar [Holdings L.P.] and received increasing partnership interests in return. All of the contributions were reflected in her capital account, and the value of her daughters' capital accounts was not enhanced because of her contributions. After she contributed the . . . securities to the partnership, she made gifts of [additional] interests in the partnership to her daughters. . . . [The taxpayer] made gifts of interests in Dimar to her daughters and did not make indirect gifts of portions of the . . . securities that she had contributed to the partnership." *Id.*

**3.     Uncertain Sequence of Events (*Senda*)**

Two important facts distinguish *Shepherd* from both *Estate of Jones* and *Gross*. First, in *Shepherd*, when property was contributed to the partnership, it was allocated among the partners according to their share of the partnership, whereas in *Estate of Jones* and *Gross*, the transferred property was attributed solely to the donor's capital account. Second, in

*Shepherd*, no subsequent gift of partnership interests was involved, whereas in *Estate of Jones* and *Gross*, after the contributed property had been reflected in the donor's account, the donor gave interests in the partnership to the other partners. This sequence of activities, namely first creating the partnership, then contributing property to the partnership (and ascribing it to the taxpayer's own capital account), and finally making a gift of partnership interests, has been described as "critical" in evaluating the tax consequences of the transactions. *See Senda v. Comm'r*, 433 F.3d 1044, 1046 (8th Cir. 2006). In *Senda*, however, the taxpayers did not present "reliable evidence that they contributed the stock to the partnerships before they transferred the partnership interests to the children." *Id.* Absent adequate proof of the chronology of events, the transactions in *Senda* were deemed to mirror those in *Shepherd*; the taxpayers were treated as having gifted partnership interests to their children before transferring property to the partnership, and the contributed property was therefore held to have enhanced the children's partnership interests and constituted an indirect gift to each child. *See Senda v. Comm'r*, T.C.M. (RIA) 2004-160, 2004 WL 1551275, *aff'd*, 433 F.3d 1044 (8th Cir. 2006).

### 4. **Oral Testimony Is Insufficient**

In this case, the Government relies heavily on *Senda* and contends that the sequence of events here was equally uncertain. The various documents, contributing property to WLFB LLC, creating Trusts for each child, and giving each Trust percentage interests in the LLC, were all signed on the same day, January 22, 2003. Although the Trust Agreements and Gift Documents were not dated when executed, they were eventually given the date of January 22, 2003. The Membership Interest Ledger for the LLC shows the transfers of percentage interests from William to Stacy Linton, and from William and Stacy Linton to each of the four Trusts; however, the Ledger does not indicate the dates of these transfers. *See* Exh. K to Linton Decl. (docket no. 23-13); *compare Senda*, 2004 WL 1551275 at *6 (noting that the taxpayers "did not maintain any books or records for the partnerships other

than brokerage account statements and partnership tax returns"). In addition, although the letters directing US Bancorp Piper Jaffray[3] to transfer securities to WLFB LLC were signed and dated on January 22, 2003, they were not received by US Bancorp Piper Jaffray until January 24, 2003, and the instructions were not followed until after the date of receipt. *See* Exh. D to Auchterlonie Decl. (docket no. 20-5); *see also* Exhs. M - Q to Auchterlonie Decl. (docket nos. 20-14, 20-15, 20-16, 20-17, & 20-18) (indicating that Mr. Linton's requested inter-account transfers did not occur until January 24, 2003, at the earliest, and as late as January 31, 2003). The Quit Claim Deed conveying real property in Snohomish County to WLFB LLC was dated and delivered to the Lintons' attorney on January 22, 2003, but it was not recorded until February 13, 2003. The parties, however, agree that this transfer was effective on the date the deed was executed and delivered, not on the date it was recorded. Plaintiffs' Response at 12 (docket no. 25); Government's Reply at 5 (docket no. 29).

In connection with their attempt to establish a chronology of transfers having favorable tax consequences, plaintiffs ask the Court to consider transcripts from the depositions of William Linton, Richard Hack, and Caryl Thorp. The Government contends that this oral testimony is either inadmissible or insufficient, citing an unpublished decision of the Ninth Circuit for the proposition that a taxpayer's claim for refund "must be substantiated by something other than tax returns, uncorroborated oral testimony, or self-serving statements." *Lovelace v. United States*, 1991 WL 275375 at *1 (9th Cir.) (quoting *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985)). The Government also references a tax regulation indicating that the applicability of the gift tax should be "based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor." 26 C.F.R. § 25.2511-1(g)(1).

---

[3] In his declaration, William Linton describes letters also directing RBC Dain Rauscher to transfer certain assets to WLFB LLC, but the record contains no such documents. *See* Linton Decl. at ¶¶ 12 & 15 and Exh. E.

ORDER - 11

The Court is persuaded that plaintiffs may offer parol evidence concerning the Trust Agreements and Gift Documents, but concludes that such testimony does not aid plaintiffs in their efforts to obtain a tax refund. The Court is aware of no authority that would preclude the Lintons from testifying they did not place the dates on the Trust Agreements and Gift Documents, or that would bar their attorney from indicating he filled in those dates. Moreover, no evidentiary or tax rule has been cited that would prohibit plaintiffs from proffering evidence about their intent or "state of mind" in connection with these transactions. *See Trucks, Inc. v. United States*, 234 F.3d 1340, 1342 (11th Cir. 2000) ("evidence about the state of mind of the [taxpayer] . . . is considered direct evidence as to the reasonableness of her decisions, and will not be seen as merely self-serving statements"). Finally, because plaintiffs, as the non-moving party, are entitled to have all reasonable inferences drawn in their favor, for purposes of the Government's summary judgment motion, the Court will treat the deposition testimony at issue as admissible evidence. *See* Fed. R. Civ. P. 56(e)(1) (affidavits supporting or opposing a summary judgment motion must "set out facts that would be admissible in evidence").

Plaintiffs' parol evidence, however, does not prove the sequence of events that they assert in this litigation, and thus, whether or not the Court considers the parol evidence, the result is the same.[4] Each Trust Agreement indicates that it is effective upon contribution of property to the Trust, and that, at the time of its signing, property consisting of interests in WLFB LLC had been transferred to the Trustee. *See* Exh. E to Auchterlonie Decl. (docket

---

[4] To be clear, the various subsequently prepared documents in this case do not serve as reliable evidence of plaintiffs' intent. *See Senda*, 433 F.3d at 1047 (the tax returns and certificates of ownership generated months or weeks later were "unreliable in deciding whether petitioners transferred the partnership interest to the children before or after they contributed the stock to the partnerships" (quoting *Senda*, 2004 WL 1551275 at *6)). For example, the Membership Interest Ledger for WLFB LLC, which was prepared a few months after the transactions at issue, contains no dates and offers no information concerning the sequence of events. *See* Exh. K to Linton Decl. (docket no. 23-13). Likewise, the Moss Adams Report provides no useful data, but rather makes assumptions about the transactions that occurred approximately six months before the report was generated. *See* Exh. H to Linton Decl. (docket no. 23-9). Finally, the tax return for WLFB LLC was filed over a year after events, *see* Exh. J-1 to Linton Decl. (docket no. 23-11), and it does not constitute contemporaneous evidence of plaintiffs' intent.

ORDER - 12

no. 20-6). In turn, in executing each Trust Agreement, the Trustee "acknowledge[d] receipt of such property." *Id.* In addition, the Gift Documents each recite that the respective Trusts are "dated the same date hereof." Exh. G to Linton Decl. (docket no. 23-8). Thus, the express language of these documents establishes that the Trusts were created and the gifts were made on January 22, 2003; on that date, when the Trust Agreements were signed, percentage interests in WLFB LLC had already been or were contemporaneously gifted to the Trusts, thereby making the Trusts effective.

Plaintiffs seek to reform the Trust Agreements and Gift Documents to reflect that both the creation of the Trusts and the gifting to the Trusts occurred on January 31, 2003. They cite to Washington cases describing the circumstances under which a written instrument may be reformed, including to correct a scrivener's error, due to mutual mistake, or as a result of unilateral mistake caused by fraud or other inequitable conduct. *See Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843-44, 99 P.2d 54 (2000); *Reynolds v. Farmers Ins. Co.*, 90 Wn. App. 880, 884-85, 960 P.2d 432 (1998); *Snyder v. Peterson*, 62 Wn. App. 522, 526-29, 814 P.2d 1204 (1991). Plaintiffs, however, fail to present any evidence to justify the reformation they desire. The proffered testimony proves only that the Lintons did not date the Trust Agreements or the Gift Documents and that the dates on those documents are in Mr. Hack's handwriting. At most, this evidence establishes only a scrivener's error with respect to the date; it does not demonstrate any scrivener's error[5] in the written terms of the documents. Those terms explicitly indicate that the gifting to the Trusts occurred before or with the signing of the Trust Agreements, which undisputedly took place on January 22, 2003.

---

[5] Plaintiffs do not appear to challenge the Trust Agreements or Gift Documents on the basis of any unilateral mistake generated by fraudulent conduct. At oral argument, counsel for plaintiffs clarified that the mutual mistake doctrine is likewise not alleged as a ground for reformation because the documents at issue convey a gift. In response or perhaps as an addendum, the Government asserted that the failure to join Trustee James Linton as a party was fatal to plaintiffs' request for reformation and that the Court lacks subject matter jurisdiction to grant such relief because it would only flow from state law claims beyond the scope of the Government's waiver of sovereign immunity. In light of its ruling in this matter, the Court need not address either of these contentions.

ORDER - 13

Plaintiffs cannot via parol evidence contradict or modify the express language of the Trust Agreements or the Gift Documents. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005) (Washington courts "do not interpret what was intended to be written but what was written" (clarifying the holding of *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990))).

Moreover, plaintiffs have offered no theory under which the Trust Agreements and Gift Documents would have been rendered void or voidable had they never been dated. At oral argument, however, counsel for plaintiffs suggested that the Trusts could not have been effective on January 22, 2003, because no trust res existed on that date. This contention is flawed. Although a voluntary trust requires "subject matter" or res to be valid, *e.g.*, *Laughlin v. March*, 19 Wn.2d 874, 878, 145 P.2d 549 (1944), any type of property may be held in trust, including undivided, reversionary, executory, or contingent future interests, remainders (whether contingent, vested, or vested subject to being divested), and choses in action, *see* Restatement (Third) of Trusts § 40 cmt. b (2003). In this case, the res consisted of percentage interests in WLFB LLC, which existed and were contributed to the Trusts at or before the signing of the Trust Agreements on January 22, 2003.

In addition, the percentage interests had value because, as of January 22, 2003, WLFB LLC had both real and personal property. The parties agree that the conveyance of undeveloped real estate in Snohomish County was effective on January 22, 2003, when Mr. Linton signed the Quit Claim Deed. Plaintiffs also contend that the transfer of securities was effective on January 22, 2003, when Mr. Linton executed the Assignment of Assets in favor of WLFB LLC. Although plaintiffs make this argument for another reason, namely in an effort to show that the contribution of securities to the LLC occurred prior to the gifts of LLC interests to the Trusts, having advanced this position, plaintiffs will not be heard to challenge whether WLFB LLC had assets, or whether percentage interests in WLFB LLC constituted adequate trust res, on January 22, 2003.

ORDER - 14

On their claim for tax refund, plaintiffs bear the burden of proof.[6] *See* <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935). They have not met this burden. They have not demonstrated the existence of any genuine issue for trial, and they have not refuted the appropriateness of treating the transactions in question as indirect gifts to the children's Trusts of the assets of WLFB LLC. The Court concludes, as a matter of law, that the Trusts were valid and irrevocable on January 22, 2003, regardless of what date, if any, was placed on the Trust Agreements. The Court also concludes that the gifts of percentage interests in WLFB LLC were made on January 22, 2003, regardless of what date, if any, was placed on the Gift Documents. In addition, the Court is satisfied that the percentage interests in WLFB LLC constituted sufficient trust res. Because the Trusts were created, and gifts of LLC interests were made to the Trusts, on January 22, 2003, either before or simultaneously with the contribution of property to WLFB LLC, the Court holds that this case is analogous to both <u>Shepherd</u> and <u>Senda</u>, and that the Lintons' transfers of real estate, cash, and securities enhanced the LLC interests held by the children's Trusts, thereby constituting indirect gifts to the Trusts of pro rata shares of the assets conveyed to the LLC.

### 5. **Step Transaction Doctrine**

The Court also finds persuasive the Government's alternative theory that, even if plaintiffs could establish the proper sequence of events, namely funding the LLC before gifting interests in it, they nevertheless made indirect gifts to their children's Trusts under the step transaction doctrine. The step transaction doctrine "treats a series of formally separate

---

[6] Plaintiffs incorrectly suggest that the burden of proof has shifted to the Government pursuant to 26 U.S.C. § 7491(a), which provides that, "[i]f . . . a taxpayer introduces credible evidence with respect to any factual issue . . . , the Secretary shall have the burden of proof with respect to such issue" so long as the taxpayer has satisfied certain prerequisites, including cooperation with the IRS. Plaintiffs have not identified any factual issue on which the Government should bear the burden of proof. Indeed, at oral argument, counsel for plaintiffs conceded that the matter before the Court involves only questions of law. Thus, the burden-shifting provision of the tax code has no relevance to this case. *See* <u>Calvert v. Comm'r</u>, T.C. Summ. Op. 2007-7, 2007 WL 105129 at *1 n.1 ("Since this case involves only a question of law, sec. 7491 is not applicable here."); *see also* <u>Ayres v. Comm'r</u>, T.C. Summ. Op. 2007-4, 2007 WL 54098 at *1 n.1 ("The facts are not in dispute, and the issue is a question of law; therefore, with respect to the burden of proof, the Court need not address the applicability of sec. 7491." (citing <u>Higbee v. Comm'r</u>, 116 T.C. 438 (2001))).

ORDER - 15

'steps' as a single transaction if such steps are in substance integrated, interdependent, and focused toward a particular result." *Penrod v. Comm'r*, 88 T.C. 1415, 1428 (1987). Taxation is concerned more with the substance of a transaction than with its mere form. *Cal-Maine Foods, Inc. v. Comm'r*, 93 T.C. 181, 197 (1989). Although a taxpayer has the right to minimize taxes as far as the law will allow, a taxpayer may not "through form alone achieve tax advantages which substantively are without the intent of the statute." *Id.*; *see also id.* at 197-98 ("A given result at the end of a straight path is not made a different result because reached by following a devious path." (quoting *Minn. Tea Co. v. Helvering*, 302 U.S. 609, 613 (1938))). Accordingly, when "a taxpayer has embarked on a series of transactions that are in substance a single, unitary, or indivisible transaction, the courts have disregarded the intermediary steps and have given credence only to the completed transaction." *Id.* at 198.

Whether a series of transactions should be "stepped" together and treated as a single transaction generally constitutes a question of fact. *Senda*, 433 F.3d at 1048; *Cal-Maine Foods*, 93 T.C. at 198. The proper characterization of a transaction for tax purposes, however, is an issue of law. *Senda*, 433 F.3d at 1048. No specific standard has been universally applied in assessing whether a number of separate steps or activities should be viewed as comprising one transaction; however, courts have generally used one of three alternative tests: (i) the "binding commitment" test; (ii) the "end result" test; and (iii) the "interdependence" test. *Holman v. Comm'r*, 130 T.C. 170, 187-88 (2008); *see Cal-Maine Foods*, 93 T.C. at 198-99; *see also Santa Monica Pictures, LLC v. Comm'r*, 89 T.C.M. (CCH) 1157, 2005 WL 1111792 at *80-*81 (2005).

The binding commitment test, which is the narrowest alternative, collapses a series of transactions into one "if, at the time the first step is entered into, there was a binding commitment to undertake the later step." *Penrod*, 88 T.C. at 1429. The end result test stands at the other extreme and is the most flexible standard, asking whether the "series of formally separate steps are really pre-arranged parts of a single transaction intended from the outset to

reach the ultimate result." *Id.* The interdependence test inquires whether, "on a reasonable interpretation of objective facts," the steps were "so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series" of transactions. *Cal-Maine Foods*, 93 T.C. at 199; *Penrod*, 88 T.C. at 1430. The interdependence test focuses on the relationships between the steps, rather than on their end result. *Penrod*, 88 T.C. at 1430. The question is whether "any one step would have been undertaken except in contemplation of the other integrating acts." *Cal-Maine Foods*, 93 T.C. at 199.

Regardless of which of these three alternative tests is applied, plaintiffs made "stepped" indirect gifts to their children's Trusts of the assets they contributed to WLFB LLC. The binding commitment test is met because plaintiffs executed binding Trust Agreements and Gift Documents at the same time they took the first step of contributing property to the LLC; as counsel for plaintiffs conceded during oral argument, these documents would have been valid after signing had they never been dated. The end result test is likewise satisfied because plaintiffs undisputedly had a subjective intent to convey as much property as possible to their children while minimizing their gift tax liability, pursuant to which they crafted, with the aid of an attorney and a tax advisor, a scheme consisting of "pre-arranged parts of a single transaction." *Penrod*, 88 T.C. at 1429. The pre-arrangement is most apparent in Mr. Linton's explanation for why he did not date the Gift Documents, namely in an effort to ensure, for tax purposes, that US Bancorp Piper Jaffray completed the transfers of securities before the gifts became effective. *See* Linton Dep. at 37:13-38:16, Exh. A to Colvin Decl. (docket no. 22-2). In addition, the interdependence test is met because the undisputed evidence demonstrates that plaintiffs would not have undertaken one or more of the steps at issue absent their "contemplation of the other integrating acts." *Cal-Maine Foods*, 93 T.C. at 199. But for the anticipated 40% to 49% discount in calculating gift taxes, premised on the low market appeal of WLFB LLC's structure, plaintiffs would not

have contributed assets to the LLC. Indeed, the quantum of property transferred to WLFB LLC was determined solely on the basis of maximizing the tax advantages of the transaction. *See* Linton Dep. at 26:6-23, Exh. B to Auchterlonie Decl. (docket no. 20-3). Because the events here satisfy all three of the step transaction tests, the Court need not choose among the different standards, and the Court holds as a matter of law that, under the step transaction doctrine, plaintiffs made gifts to their children's Trusts of pro rata shares of the assets they contributed to WLFB LLC. Although the applicability of the step transaction doctrine has been described as generally an issue of fact, in this case, no purpose would be served by deferring to trial the legal analysis of the undisputed evidence.

This case is distinguishable from two recent cases in which the Tax Court concluded that the step transaction doctrine did not apply. *See Holman v. Comm'r*, 130 T.C. 170 (2008); *see also Gross v. Comm'r*, 96 T.C.M. (CCH) 187, 2008 WL 4388277 (2008). In *Holman*, the taxpayers, husband and wife, on the sixth day after the formation and funding of a limited partnership, made gifts of limited partnership shares ("LP units") to a trust for the benefit of their children. 130 T.C. at 174-79. The partnership had been funded with stock in Dell Computer Corporation ("Dell"). *Id.* at 172, 175. The Tax Court, observing that "the passage of time may be indicative of a change in circumstances that gives independent significance to a partner's transfer of property to a partnership and the subsequent gift of an interest in that partnership to another," *id.* at 189, examined the historical prices of Dell stock and concluded that the value of an LP unit changed over time due to its correlation with the worth of Dell stock, which dropped 1.316% during the six days at issue. *Id.* at 189-91. The Tax Court found that, during the six days between funding the partnership and gifting the LP units, the taxpayers bore a "real economic risk" that the value of an LP unit could change, and thus, the Tax Court refused to disregard the passage of time or to treat the contributions to the partnership and the subsequent gifts as occurring simultaneously pursuant to the step transaction doctrine. *Id.*

ORDER - 18

The facts of *Gross* are similar to those of *Holman*. In *Gross*, the taxpayer and her daughters formed a limited partnership into which they each contributed a small amount of cash, which was reflected in their respective capital accounts. 2008 WL 4388277 at *1-*2. Over the course of three months following the formation of the partnership, the taxpayer transferred various securities to the partnership, each time receiving credit for the contributions on her capital account. *Id.* at *2, *7. The last of these transfers occurred eleven days before the taxpayer gave each daughter, by way of a "Deed of Gift," a 22.25% limited interest in the partnership. *Id.* In *Gross*, the Tax Court cited to *Holman* as support for its decision that the step transaction doctrine did not apply, focusing on the passage of eleven days between the last transfer of securities and the gifts of partnership interests, as well as on the status of the securities at issue as "common shares of well-known companies." *Id.* at *7-*8. The Tax Court in *Gross* concluded that "[t]he form of the transactions . . . accords with their substance." *Id.* at *8.

The case before this Court bears little resemblance to either *Holman* or *Gross*. In contrast to the taxpayers in *Holman* and *Gross*, plaintiffs here did not make affirmative decisions to delay the gifts for some period of time after funding. Rather, with the benefit of hindsight, knowing the date on which US Bancorp Piper Jaffray completed the last transfer of assets to WLFB LLC, plaintiffs devised the passage of time between funding and gifting that would have favorable tax consequences. Moreover, unlike in *Holman*, in this case, plaintiffs have submitted no data concerning the fluctuations, if any, in the prices of the various securities at issue on a daily basis during the period in question. On this subject, the Government contends that, with regard to the bulk of the assets in question, consisting of real property worth approximately $650,000, cash in the amount of $843,724, and municipal bonds valued at roughly $1.54 million, plaintiffs cannot show the volatility necessary to establish a real economic risk associated with the passage of less than ten days. *See* Exh. 1 to Moss Adams Report (docket no. 23-9 at 35); Exh. E to Linton Decl. (docket no. 23-6);

Exh. M to Auchterlonie Decl. (docket no. 20-14). Given the nature of the assets and the dearth of evidence in the record to suggest any real economic risk during the alleged interim between funding the LLC and gifting interests in it, the Court is satisfied that neither *Holman* nor *Gross* raise any doubt concerning the applicability of the step transaction doctrine in this case.

**Conclusion**

Plaintiffs have raised no genuine issue of material fact concerning their subjective intent, the contemplated sequence of transactions, or the way in which events actually unfolded. On January 22, 2003, plaintiffs executed documents and transferred property in a manner that, as a matter of law, constituted indirect gifts to their children. *See Senda v. Comm'r*, 433 F.3d 1044 (8th Cir. 2006). These actions also, as a matter of law, satisfy the step transaction doctrine. *See Penrod v. Comm'r*, 88 T.C. 1415 (1987). The Court therefore GRANTS summary judgment in favor of the Government and DISMISSES plaintiffs' complaint with prejudice.

IT IS SO ORDERED.

The Clerk is directed to enter judgment consistent with this Order and to send a copy of this Order to all counsel of record.

DATED this 1st day of July, 2009.

_____
Thomas S. Zilly
United States District Judge